## Mason *vs* Bascom.

APPEAL FROM THE MONTGOMERY CIRCUIT.

*New trial. Forcible detainer. Restitution. Lapse of time.*

JUDGE EWING delivered the opinion of the Court.

Bascom sued out a warrant of forcible detainer against Mason, for a pasture of about forty acres, and one hundred and fifty acres of woodland, on Slate creek, in Bath county, and obtained a verdict and judgment for restitution, as claimed in the warrant. Mason traversed the inquisition and a verdict was found for him, and the verdict

set aside and a new trial granted. Upon the second trial a verdict was found for Bascom, and judgment for possession awarded as claimed by the warrant, and Mason has appealed to this Court.

Tho. D. Owings conveyed various tracts of land and other property, embracing the field in contest, to Peter Mason, John Mason, Jr. Elihu Owings, Thomas Fletcher, George Howard, and Vivian Ferguson, to indemnify them as his sureties. John Mason, Jr. acting under a power from all the mortgagees except Fletcher, who had died, leased the field in contest to one Samuel Herndon, in 1830, for five years, commencing from the first of March following. Before the expiration of Herndon's lease, and while he was in possession, John C. Mason, the traverser, leased the Slate creek Iron Works and the land on which it was situated, and the field in contest, of Wickliffe, and was let into the possession of the field by Herndon, who formed a partnership with him and one Lewis Mason, in the lease from Wickliffe. Herndon afterwards sold out his interest in the partnership, to John C. Mason, and left him in the possession of the field.

Bascom claiming the possession as purchaser of the reversion from B. Wister, J. Liter, R. Price, and E. Cresson, who claimed as purchasers of the same from the mortgagees and mortgagor, Owings, instituted this warrant about two years or more after John Mason, Jr. on the part of the mortgagees, had demanded the possession of J. C. Mason, who refused to surrender it or pay rent, claiming under Wickliffe's lease.

We think the first verdict was properly set aside by the Circuit Court, on the ground of surprise. Bascom and his counsel had used all reasonable diligence to procure and place on file, the proper copies evidencing his derivation of title. And the errors in the copies were such as might have escaped the scrutiny of the most vigilant counsel, and as to the deed copied, did in fact escape the detection of the counsel on both sides, and was first spied out by the Court, upon a motion to exclude it on other grounds. The deed and power of attorney, essential links in the chain of title, duly executed and properly authenticated, were produced during the pendency of the

motion for a new trial, and were used on the second trial, which was *had* upon the *merits;* and according to the repeated decisions of this Court, nothing less than the most commanding reasons should induce this Court to set it aside on this ground, and direct a judgment upon the first verdict which was obtained, it is obvious, not upon a fair trial of the merits. If Bascom held the title in reversion of the lessors to Herndon, it was competent for him to maintain the warrant, if the lessors themselves could have maintained it.

The deed from the five surviving mortgagees to Wister, Liter, Price, and Cresson, if properly executed, passed to the latter all the title in reversion or otherwise, of those who *made* the *lease* to Herndon. That deed is executed as to three of the mortgagees, by their attorney in fact, John Mason, Jr. who acted under a power of attorney, which authorized him to settle the mortgagees liabilities, to take possession of the mortgaged premises, lease, *sell,* and *convey* the same, and settle and pay off the debts secured by the mortgage, with this reservation, that he is not to *release* the interest of the mortgagees in any of the lands including any of the Iron Works or ore banks, without their consent or approbation. And it does not appear that their *assent* was given to the sale and conveyance to Wister, &c. which was made in satisfaction of one of the mortgage debts, though it is not shown that they have made any objections to it. If the field in contest embraced in the sale, can be regarded as embraced within the reservation or exception, against the general authority to sell and convey, as covered by the tract including the Iron Works, it seems to us that the restriction is to be understood as only intended to limit the power of the attorney against a *release* or *surrender* of the mortgage as to those lands, and not against a *sale* and *conveyance* as the means of paying the mortgage debts. And if it were not so intended, that similar language, as broad in its import, would have been used in the instruction as was used in the power to *sell* and *convey.*

Another objection is raised, that the power conferred on the mortgagees in the mortgage deed, to sell and convey, "*three of them concurring,*" is a personal trust, and

*The grantee of the reversion may maintain forcible detainer against the tenant if the lessors could.*

MASON
vs
BASCOM.
cannot be delegated or exercised by any *less* than *three.* If this be admitted, as the mortgage deed vests the *legal title* in the mortgagees, as such, they may pass that legal title to another, subject to Owings' equity of redemption, independent of the power, or delegate the power to pass it to that extent, to an attorney, and the conveyance made by Mason, the attorney, in conjunction with Owings, the mortgagor, vests the absolute title of those who *leased,* in Wister, Liter, &c. the purchasers.

But the conveyance made by Wister, Liter, &c. to Bascom, is defective as to the interest of Cresson, in this, that this conveyance is made by their attorney in fact, James Suddeth, acting under a power of attorney from the vendors, and that power seems to be executed by Cresson by his attorney, Samuel Webb, and no power is exhibited authorizing Webb to make the power to Suddeth. The title therefore, as to one-fourth, or Cresson's interest, has not passed to Bascom, from any thing that now appears in the record.

One holding title to an undivided part may maintain a suit for forcible detainer.

The question arises whether he, holding the title to three-fourths only, can maintain the warrant? We think he can. The right of possession is not the subject of inquiry in this action, but the forcible detention, and that is a wrong to any and every person from whom the possession is forcibly detained, and for which he had a right to be redressed by restitution. The wrong to him is not lessened by the wrong to others, nor should he be precluded from redress though others, who may also have been injured in like manner, may not choose to join him in the action. Moreover, if he be restored to the possession, his possession is the possession of his co-tenants in common, and that would be the effect of his restitution to possession, whether he recovered an undivided interest or not; so that the defendant is not injured and has no just ground to complain, whether he recovers in the one form or the other. And it has been determined by this Court that dilatory pleas are not allowable in this proceeding, and that one heir, of several entitled, or one tenant in common, may maintain it: *Jones* vs *Overton,* (4 *Bibb,* 334;) *Rogers* vs *Turley,* (*Ibid,* 355.)

We perceive an irregularity in the verdict and judgment which we deem proper to notice.

The warrant is for the field in contest, and *one hundred and fifty acres of woodland.* The lease to Herndon, exhibited, is for the field only, and not for any woodland. The plaintiff's right to restitution, bottomed upon the lease, can extend no farther than the premises embraced by the lease. As the warrant contains no *description* of the woodland, either general or special, and the inquisition which is found true, is that the defendant was guilty of the forcible detainer, as charged in the warrant, the sheriff in executing the writ of restitution would not be able to give possession of the woodland, or to a greater extent than the field which was embraced in the lease, and the defendant might not in fact sustain any injury from this irregularity, it might not therefore be sufficient ground to reverse, but it is certainly an irregularity, an attempt at least to find a forcible detainer, and a right to restitution of that which was not authorized by the proof, and might lead to difficulties, misconstructions, and controversies in the country, in the execution of the process of the Court, and ought to be avoided upon a second trial.

The lease to Herndon was made long after the recovery in ejectment in favor of Turnan, under whom Wickliffe claims, who leased to J. C. Mason. And though a tenant who is defendant in an ejectment holding under a lease which was executed before, after the recovery of judgment against him, his landlord failing successfully to defend his possession, may not wait to be turned out of possession, but may attorn to and take shelter under the successful party. Yet we are not prepared to admit that, when the lease is executed and possesion obtained *after* the judgment, he can attorn to the plaintiff in the judgment or set it up as a bar to his landlord's right to restitution after the expiration of his lease.

*Though a tenant, against whom a recovery is had in ejectment, need not wait to be turned out, but may take refuge under the successful party—Yet when the lease is taken after the judgment, he cannot then attorn to any other than his landlord.*

It seems to us that he should no more be allowed to attorn to, and set up such a judgment in contravention of his landlord's right, than he would be allowed to attorn to and set up a better adversary title.

As many objections might exist against the execution of the judgment as could exist against the recovery of

judgment and ouster of his possession on a better outstand-
ing title.   And as he, notwithstanding the judgment, has
taken a lease, looking to the lessor, as his landlord, for
protection, good faith requires that he should adhere to
him and await the result of the proceedings under the
judgment, at least he ought not to be allowed to use the
judgment in bar of the landlord's right to be placed in *statu
quo*, as to the *possession* which he yielded to the tenant.

There is evidence in the record tending to show that
the defendant below was admitted by, and came into the
possession under Herndon, the tenant of the mortgagees
of Owings, and that after the expiration of Herndon's
lease, and more than two years before the sueing out the
warrant in this case, John Mason demanded the posses-
sion from him, or the payment of rent, and he refused to
surrender, and claiming to hold under Wickliffe disavow-
ed the title of the mortgagees.   The Court instructed the
jury, in substance, that if they believed that the defen-
dant, the traverser, entered under Herndon, that the stat-
ute of limitations could not be relied on as a bar; that the
statute of limitations had no operation between landlord
and tenant.   This instruction brings up, for the first time
in this Court, a construction of the 15th and 16th sec-
tions of the statute of forcible entry and detainer: 1 *Stat.
Law*, 730.

By the 1st clause
of the 15th sec-
tion of the stat-
ute concerning
forcible entry &
detainer, (*Stat.
Law*, 730,) one
who has been in
peacable posses-
sion more than
2 years, as ten-
ant, may be guil-
ty of a forcible
detainer.

The 15th section contains two distinct clauses.   The
first clause provides "that no writ of forcible entry or
forcible detainer, shall be taken at *any time after two*
years from the forcible entry or detainer complained of."
The second clause goes a step further, and provides:
"nor shall restitution be awarded upon a writ of forcible
entry or detainer, where the defendant hath had *peacable
possession for two whole years* next before the finding of
the inquisition."   And the section is concluded in the fol-
lowing language: "except in the cases hereinafter provided
for."   The 16th section, which follows, provides a rem-
edy and mode of proceeding in cases of tenants at will,
after the expiration of the will of their landlords, and other
tenants after the expiration of their terms; and the ques-
tion arises whether the cases of tenants are excepted from
the operation of the provision contained in *both* clauses

of the prior section, or only from the provision contain-ed in the latter clause. We think they are excepted from the operation of the latter clause only.

The first clause operates as a limitation of the right of action, which, as in all other cases of limitation, never commences running until the cause of action accrues, so that under it a defendant might be in peaceable and rightful possession for two years and more, and not be subject to the action for forcible entry, and yet afterwards be guilty of a forcible detainer, so as to subject himself to the latter action, in which case, as the cause of action accrues only from the time of the forcible detainer, two years would have to run before the plaintiff's action would be barred, which, added to the two years or more of the prior possession, would make four or more years that he might be in peaceable possession, and yet the cause of action against him not barred.

But under the latter clause, restitution could not be awarded against him if he had been two whole years in peaceable possession next before the finding of the inquisition. So that there was no necessity to exempt tenants from the operation of the first clause, as under it the limitation would not commence running until the landlord's cause of action accrued, and it could not accrue until after the termination of his will or expiration of the tenant's term, and a refusal, on demand, to surrender the possession to the landlord, or acts which are tantamount to a refusal.

If, after such a refusal, the landlord failed to sue for two years, he might, with as much reason and propriety as in any other case, be barred of this summary remedy. But there was an evident propriety and necessity to except the cases of landlords and tenants from the operation of the last clause, otherwise, after a peaceable and rightful possession, for two years, by the tacit or implied assent of the landlord, and before any cause of action had accrued, the landlord might be barred of his right to restitution, though he might sue within two years after his cause of action accrued, as *no restitution could be awarded after two years peacable possession.*

MASON
*vs*
BASCOM.

—But under the latter clause of said section, restitution cannot be awarded after the lapse of two years next before the finding of the inquisition—except in cases of tenants holding over, after the expiration of their leases, or the will of landlord.

If the case of landlord and tenant is excepted from the operation of the first clause, then there is no statute of limitation barring the landlord's right to maintain this *remedy*, though the tenant shall have remained in peaceable and undisturbed possession, claiming adversely, for twenty or more years. And while the Legislature has been scrupulously vigilant in providing statutes of limitation in all other cases, as the means of putting an end to litigation, and giving repose to the possession, it has failed to provide any limitation in this *summary mode* of proceeding. We cannot believe that such could have been its intention.

Moreover, as the latter clause contains a distinct and substantive provision differing from, and more extended in its import than the first clause, and is connected with it only by a disjunctive conjunction, and the exception is placed in juxta-position to the latter clause. According to grammatical construction it should be made to apply to, and qualify the latter clause only, and not be carried beyond it to the prior clause.

Upon the whole, we think the first clause or limitation, as to the right of action, applies to and bars the landlord as well as others, after two years has run from the accrual of his cause of action, and he is only protected from the operation of the last clause. As the evidence tended to show that the defendant below occupied the condition of tenant or *quasi tenant*, and that he refused to surrender the possession to his landlord, on demand, or done those acts which were tantamount to a refusal, from which time the landlord's cause of action accrued, and that from that time more than two years had elapsed before the institution of Bascom's writ, that the instructions were misleading and erroneous.

The judgment is therefore reversed, and cause remanded, that a new trial may be awarded without costs; and the appellant is entitled to his costs in this Court.

*Wickliffe & Apperson* for appellant: *Owsley & Goodloe and Peters* for appellee.

The landlord is barred of his writ of forcible entry or detainer after 2 years adverse holding over by his tenant.